# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **RICKEY L. GARY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 14 CV 9589** |
| **v.** | ) | |
| | ) | **Magistrate Judge** |
| **NANCY A. BERRYHILL, Acting** | ) | **Maria Valdez** |
| **Commissioner of the U.S. Social** | ) | |
| **Security Administration[1],** | ) | |
| | ) | |
| **Defendant.** | | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Rickey Gary's ("Plaintiff") claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 12] is denied and the Commissioner's motion [Doc. No. 20] is granted.

## BACKGROUND

### I. PROCEDURAL HISTORY

Plaintiff applied for SSI on January 4, 2010 alleging an onset date of June 1, 2006 due to loss of hearing in both ears, Human Immunodeficiency Virus ("HIV"), and a seizure disorder. (R. 270-72, 287.) The application was denied initially and

---

[1]Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

again upon reconsideration. (R. 181-82.) After both denials, on November 9, 2010, Plaintiff filed an Administrative Law Judge ("ALJ") hearing-request pursuant to 20 C.F.R. § 404.929 *et seq*. (R. 195-97.) The hearing was scheduled on December 2, 2011. (R. 54-180.) Plaintiff appeared for his hearing along with his attorney and testified before the ALJ. (Id.) A Vocational Expert ("VE") was also present to offer testimony. (Id.) On March 14, 2013, the ALJ issued a written determination finding Plaintiff not disabled and therefore denied his SSI application. (R. 24-48.) The Appeals Council ("AC") denied further review on October 8, 2014. (R. 1-3.)

## II.    MEDICAL EVIDENCE

Plaintiff's medical records indicate that he was admitted to the University of Chicago Medical Center on October 27, 2008 due to a seizure. (R. 362.) It was noted that this was Plaintiff's first seizure. (R. 367, 370.) On October 22, 2009, Plaintiff was admitted to Provident Hospital for another seizure episode. (R. 388.) Hospital evaluations indicate that Plaintiff had a normal CT scan and other laboratory testing and he was released on the same day. (R. 377.) On January 27, 2010, Ms. Marcella Jackson, a family friend, completed a seizure description form for Plaintiff. (R. 312.) She wrote that Plaintiff has at most one seizure a month and stated that she has only witnessed one of Plaintiff's seizures on July 15, 2009. (Id.) She stated that when Plaintiff experiences a seizure, he bites his tongue and is disoriented or confused after the episode. (Id.) On January 28, 2010, Plaintiff's mother, Ms. Carolyn Gary, also completed a seizure description form. (R. 313.) She noted that she only witnessed one of Plaintiff's seizures in December 2009. (Id.) She stated that

Plaintiff has at most one seizure per month. (Id.) She further noted that during an episode, Plaintiff will bite his tongue and bang his head on the table. (Id.)

Plaintiff began seeking psychiatric help from the CORE Center at Stroger Hospital ("CORE Center") since December 18, 2009 for depression. (R. 420.) During his initial screening, Plaintiff noted that he had many psychological stressors such as financial and familial problems. (Id.) He reported lacking sleep. (Id.) After the mental status exam, the doctor noted that Plaintiff's judgment and insight were poor, however, he was at minimal suicidal risk. (R. 421.) Plaintiff continued to visit the CORE Center throughout 2010. (R. 424-30.) On June 18, 2010 it was noted that Plaintiff no longer suffered from seizures. (R. 430.) Plaintiff did not return to the CORE Center for some time but on April 19, 2011, Plaintiff returned and underwent another psychosocial screening because he felt that his depressive symptoms were returning. (R. 532.) After a medical evaluation, the attending physician found that Plaintiff had minimal suicide risk and had good judgment and insight. (R. 533.)

On May 22, 2010, Dr. Elizabeth Kuester completed a Psychiatric Review Technique Form ("PRTF") in which she evaluated Plaintiff's affective disorder under listing 12.04 and his substance addiction disorder under listing 12.09. (R. 449-62.) With regard to functional limitations, Dr. Kuester noted that Plaintiff had mild limitations in the areas of social functioning, activities of daily living, and maintaining concentration, persistence, and pace. (R. 459.) Dr. Kuester noted that the medical evidence does not support Plaintiff's allegations regarding his mental

impairments, as they tend to suggest minimal treatment, mild limitations in social functioning, as well as a lack of severe psychiatric restrictions. (R. 461.)

In May 1, 2010, Dr. Rochelle Hawkins of Disability Determination Services conducted an exam evaluating Plaintiff's disability due to HIV and seizures. (R. 435-442.) A physical examination returned normal results and Dr. Hawkins opined that Plaintiff did not have any restrictions or abnormalities. (R. 436-37.) He had normal range of motion in his arms and legs. (R. 439-42.) With regard to his knees, Dr. Hawkins did not indicate any limitations or abnormalities. (R. 441.) The same month, on May 27, 2010, Dr. Francis Vincent completed a physical RFC evaluation in which he assessed Plaintiff's limitations with his history of HIV, hearing loss, and seizures. (R. 463-70.) Dr. Vincent noted that Plaintiff did not have any physical limitations except that he should avoid concentrated exposure to hazardous machinery. (R. 467.) Dr. Vincent opined that Plaintiff's seizures were well-controlled and he is able to hear without the assistance of hearing aids. (R. 470.)

Medical records indicate that Plaintiff has been a patient at Stroger since June 18, 2010. (R. 475.) He has been treated for AIDS, seizures, tobacco use, and occasional cocaine use. (R. 501.) During a follow-up appointment on February 25, 2011, it was noted that Plaintiff denied having any further seizures and that he was progressing as expected. (R. 498, 500.) On March 25, 2011, Plaintiff visited the emergency room at Stroger due to worsening symptoms of depression. (R. 494, 609-10.) It was noted that Plaintiff denied having suicidal ideations but he has had thoughts of hurting himself. (R. 609.) He was discharged but was diagnosed with

major depression. (R. 574, 610.) At discharge, the attending physician noted that Plaintiff was oriented, coherent, and was low risk for suicide or homicide. (R. 574.)

On March 26, 2011, Plaintiff underwent a comprehensive psychiatric evaluation at John Madden Mental Health Center. (R. 581-87.) Though it was noted that Plaintiff was depressed, the evaluating doctor found Plaintiff to be cooperative, organized, and goal-directed. (R. 583.) The doctor further opined that Plaintiff's affect was normal. (Id.) Likewise, Dr. John Raba also completed a seizure questionnaire in which he noted that Plaintiff suffered seizures in December 2009 and February 2010. (R. 568.) He further opined that Plaintiff's associated mental problems were depression, memory problems, and short attention span. (R. 569.) Dr. Raba indicated that Plaintiff would be capable of low stress jobs but he would disrupt the work of coworkers and would require more supervision than an unimpaired employee. (Id.) Dr. Raba also opined that Plaintiff would be absent about two days per month due to his impairments. (R. 570.)

On April 8, 2011, Dr. Raba completed another mental impairment medical assessment form. (R. 567.) Dr. Raba has treated Plaintiff since 1991 and noted that Plaintiff visits him about three to six times monthly. (R. 568.) Dr. Raba opined that Plaintiff's concentration and attention would be impaired 70 percent of the workday and found Plaintiff to have moderate limitations in maintaining activities of daily living, maintaining social functioning, accepting instructions and responding appropriately to criticisms, and getting along with coworkers without unduly distracting them. (Id.) Dr. Raba found Plaintiff markedly impaired in his ability to

maintain attention, concentration, persistence, and pace, as well as dealing with normal work stress. (Id.) Dr. Raba also completed a physical impairment questionnaire and opined that Plaintiff can lift five to ten pounds. (R. 571.) He further opined that Plaintiff could reach overhead 80 percent of the time with his left and right arm, but is able to grasp and conduct fine manipulations fully with his left and right hand. (Id.) He noted that Plaintiff could sit for six hours in an eight-hour workday and can stand or walk for two hours in a workday. (Id.)

On April 19, 2011, Plaintiff underwent another psychiatric evaluation with the CORE Center. (R. 526.) Plaintiff stated during the evaluation that he has been feeling depressed for a couple years but was never treated for it until March 2011. (R. 527.) He was diagnosed with major depressive disorder and advised to receive counseling and medication as treatment. (R. 530.) He was prescribed Celexa for depression and Trazodone for anxiety. (Id.) During a follow-up appointment on June 28, 2011, Plaintiff reported that he was compliant with his medication after being non-compliant for two weeks. (R. 510, 514.) He stated that he continued to feel symptoms of depression due to financial stressors. (R. 510.) He also stated that he needed financial assistance but could not find a job. (Id.)

On May 13, 2011, an MRI was taken of Plaintiff's knee after an altercation with his brother. (R. 608, 613.) It was noted that there is a large perfusion at the left knee joint but there was no evidence of fracture or dislocation. (Id.)

## III.    ALJ DECISION

On March 14, 2013, the ALJ issued a written decision denying Plaintiff's SSI application after finding him not disabled under the Act. (R. 24-48.) At step one, the ALJ determined that Plaintiff has not engaged in any Substantial Gainful Activity ("SGA") since his SSI application date of December 31, 2009.  (R. 29.) At step two, the ALJ found that Plaintiff had the severe impairment of HIV. (Id.) The ALJ determined that while Plaintiff alleged other impairments, such as loss of hearing, seizures, hypertension, and depression, these impairments are non-severe as they are not supported by the objective medical evidence. (R. 30-31.) At step three, the ALJ found that Plaintiff does not have an impairment or a combination of impairments that meet or medically equals the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 33.) Before step four, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work and that he is capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently. (R. 34.) The ALJ further found Plaintiff capable of standing and walking for approximately six hours in an eight-hour workday, sit for approximately six hours, and occasionally climb ramps, stairs, and short ladders. (Id.) Due to his HIV, the ALJ excluded Plaintiff from performing jobs within the food industry. (Id.) In so finding, the ALJ cites to evidence in the record of Plaintiff's compliance with his HIV medication and his improvement when he is compliant. (R. 41.)

In making this RFC finding, the ALJ gave great weight to the opinion of Dr. James McKenna, an impartial medical expert, who testified that Plaintiff did not have any functional limitations and remained capable of sustaining work for forty hours a week at a light exertional level. (R. 43.) The ALJ attributed this great weight because Dr. McKenna had access to a greater portion of the longitudinal record, and heard the testimony of the Plaintiff. (R. 45.)

The ALJ gave little weight to the opinions impartial medical expert Dr. Heinemann and state agency physical consultant Dr. Francis Vincent. (R. 45.) Specifically, the ALJ stated she attributed little weight to Dr. Heinemann's opinion because Dr. Heinemann's finding – that the Plaintiff had moderate limitations in activities of daily living and maintaining concentration persistence, or pace – ignored the Plaintiff's failure to comply with his recommended treatments, Dr. Heinemann's own limited treatment history, and how Dr. Heinemann's diagnoses of substance-induced-depression did not account for Plaintiff's substance abuse entering remission. (Id.)

The ALJ likewise afforded little weight to Dr. Vincent's opinion, to the extent Dr. Vincent's opinion differed from Dr. McKenna's. (Id.) Finally, the ALJ gave great weight to the medical opinion of DDS agency consultant Dr. Elizabeth Kuester, who found Plaintiff had only mild functional limitations in his capacity to perform activities of daily living, social functioning, and maintaining concentration, persistence, and pace. (R. 45-46.) The ALJ attributed no weight to the medical opinions of Dr. John Raba, whom the ALJ characterized as the Plaintiff's treating

source at CORE and whom is neither a mental health professional nor the Plaintiff's treating physician. (R. 46) After extensive review of the Dr. Raba's contributions to the record, the ALJ found Dr. Raba's opinions in his medical assessment were inconsistent with Dr. Raba's treatment records from the CORE Center and Madden Mental Health Center, and likewise did not comport with the medical opinions of the other physicians on record. (R. 45-47.) Thus the ALJ denied controlling weight to Dr. Raba's medical opinions. (Id.)

The ALJ found at step four that Plaintiff is capable of performing his past relevant work as a show salesman. (R. 48.) The ALJ therefore concluded that Plaintiff has not been under a disability since December 31, 2009, the date of his SSI application. (Id.)

## DISCUSSION

### I.    LEGAL STANDARD

Under the Act, a person is disabled if she has an "inability to engage in any [SGA] by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the Commissioner considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former

occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. §

416.920(a)(4). An affirmative answer at either step 3 or step 5 leads to a finding

that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d

386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3,

precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps

1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then

shifts to the Commissioner to show the claimant's ability to engage in other work

existing in significant numbers in the national economy. *Id.*

## II.   JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence,

shall be conclusive." 42 U.S.C. § 405(g). Judicial review of a final decision of the

Commissioner (here, the decision of the Appeals Council affirming the findings of

the ALJ) is limited to determining whether the ALJ's findings are supported by

substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869

(7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997).

Substantial evidence is "such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401

(1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This court may not

substitute its judgment for that of the Commissioner by reevaluating facts,

reweighing evidence, resolving conflicts in evidence. *Skinner*, 478 F.3d at 841; *see

also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that an ALJ's

decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported.") (citation omitted).

The Commissioner is not required to address "every piece of evidence or testimony in the record, [but the] analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the Commissioner denies benefits to a claimant, she must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d 863 at 872. The written decision must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate h[er] analysis so that we can follow h[er] reasoning."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors h[er] ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

## III.   ANALYSIS

In challenging the ALJ's decision, Plaintiff proffers three arguments. First, Plaintiff contends that the ALJ erred because she failed to consider his knee condition as a severe impairment. (Pl. Mot. at 3-5.) Next, he argues that the ALJ did not consider the side effects of his medications. (Pl. Mot. at 5.) Finally, Plaintiff argues that the ALJ erred in finding that Plaintiff did not suffer from a severe mental impairment and in rejecting the medical opinion of Dr. Heinemann. (R. 5-6.)

## A.   Knee Condition

Plaintiff first argues that the ALJ erred by failing to find that her knee impairment was severe. According to Plaintiff, the ALJ erroneously based her RFC determination on the opinion testimony of the ME, Dr. McKenna, who did not consider his knee impairment to be severe due to a lack of evidence supporting such a finding.  Plaintiff further argues that the ALJ failed to provide Dr. McKenna with a copy of an x-ray of his left knee that was submitted after the hearing. After a reasonable review of the medical evidence and the ALJ opinion, the court finds that the ALJ did not err when she did not consider Plaintiff's knee condition to be a severe impairment.

In order for a claimant to establish entitlement to benefits under the Social Security Act, the claimant must prove, using medically acceptable clinical and laboratory findings that he has become unable to engage in SGA by reason of a physical or mental impairment. *Johnson v. Heckler*, 741 F.2d 948, 953 (7th Cir. 1984) *citing Johnson v. Weinberger,* 525 F.2d 403, 407 (7th Cir. 1975). If there is a

conflict in evidence, the burden is on the claimant to prove that he meets the eligibility requirements. *Id.*

In her decision, the ALJ acknowledged that Plaintiff was diagnosed with mild degenerative disc disease of the left knee. (R. 30.) The ALJ further cited to treatment notes that verify the diagnosis. (R. 30, 614.) However, the ALJ ultimately found that Plaintiff's knee injury was not a severe impairment and provided several reasons to support her finding. First, the ALJ cited to a consultative examination on May 1, 2010 that returned unremarkable findings as it relates to his knee pain. (R. 37, 437-38.) The ALJ noted that Dr. Hawkins, who conducted the consultative examination, found that Plaintiff did not have any limitations in his upper and lower extremities, had no difficulty in performance, was able to get on and off the examination table, could walk, and did not require any assistive devices. (R. 37.) Dr. Hawkins also noted that Plaintiff did not have any reductions in his range of motion and noted no restrictions in his knee flexion and extension. (R. 439, 441.) Nothing else in the record supported the degree of limitation that justified a finding that the knee impairment was severe. The ALJ reasonably considered all of the medical evidence and found that Plaintiff's allegations regarding his left knee pain do not rise to the level of a severe impairment and he retains the ability to ambulate effectively. (R. 30.) While Plaintiff may argue that the ALJ erred, he did not proffer any evidence to indicate that he is more limited in his ability to work due to his left knee impairment and thus did not meet his burden of establishing a disabling impairment in his left knee.

Second, the ALJ noted that despite the Plaintiff seeking treatment for his left knee pain after an altercation with his brother, the medical evidence still failed to support a significant or continued limitation. "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004); 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled."); *Bowen v. Yuckert,* 482 U.S. 137, 146, n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). Here, again, Plaintiff has failed to show how further injury to his left knee exacerbated his condition. The medical records are simply silent in regards to further left knee limitations. Moreover, as the Commissioner correctly argues, Plaintiff has failed to show that the ALJ was required to obtain an updated opinion from Dr. McKenna or that his alleged knee condition resulted in additional functional limitations not already considered by the ALJ.

Furthermore, Plaintiff believes the ALJ erred in failing to provide the ME with a copy of the x-ray of his left knee. To support his contention, Plaintiff cites to the court's ruling in *Williams v. Massanari*, 171 F.Supp.2d 829, 833 (N.D. Ill. 2001), in which the court reasoned that the ALJ's failure to supply the ME with additional evidence prevented the ALJ from developing a full and fair record, as was his duty to do so. While the court acknowledges the holding of *Williams*, the Plaintiff has not

demonstrated that the ALJ's decision would have been different had the ME had the benefit of reviewing the x-ray.

Plaintiff contends that the ME's determination that he could perform light work was faulty as he did not have access to this x-ray. Said May 13, 2011 x-ray showed that there was a large perfusion on the left knee, however, there was "no evidence of fracture or dislocation." (R. 608.) Again, Plaintiff has pointed to nothing further in the x-ray, nor any other corroborating medical records, that would tend to show that Plaintiff's left knee condition constituted a severe impairment. In being unable to do so, he has failed to indicate how the ME's decision, or the ALJ's decision, would have been any different had Dr. McKenna reviewed the x-ray. Therefore, the ALJ's decision to consider Plaintiff's knee impairment non-severe was supported by the record.

**B.      Side Effects**

Next, Claimant argues that the ALJ failed to consider the side effects of his medication. At the hearing, Plaintiff testified that his medications prevent him from working because he becomes forgetful and groggy. (R. 82-83.) When asked to identify the medications that caused him to have side effects, Plaintiff responded that he was unsure of the cause but believed it to be his seizure and HIV medication. (Id.)

When rendering a disability determination, an ALJ should consider elements such as "objective medical evidence of the claimant's impairments, the daily activities, allegations of pain and aggravating factors, functional limitations, and

treatment (including medication)." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted). Here, the ALJ considered these factors and found that Plaintiff's testimony regarding his side effects was not fully credible. Plaintiff believes that the ALJ omitted consideration of these side effects, however after an examination of the record, that is not the case.

In her decision, the ALJ acknowledged Plaintiff's testimony regarding his side effects but noted that "there are no such complaints of side effects in the medical record." (R. 41.) The ALJ also cited to Dr. McKenna's reports that Plaintiff's treating sources "did not record complaints by the claimant regarding medication side effects and there are not complaints of fatigue in the record." (R. 43.) More significantly, Dr. McKenna's hearing testimony indicates that despite the lack of evidence of limiting side effects, he gave Plaintiff "credit that it can happen." (R. 128.) Even after giving Plaintiff the benefit of the doubt with regard to his testimony of side effects, Dr. McKenna noted that Plaintiff did not meet or equal any of the listings and found him capable of sustaining work for 40 hours a week, eight hours a day. (R. 128-29.)

Contrary to Plaintiff's arguments, the ALJ did not err in considering his side effects. The ALJ pointed out that Plaintiff's claims of significant side effects from his medication were inconsistent with the medical record as most of the treatment notes indicated no medication side effects at all, Plaintiff also testified to medical improvement with medication, and the evidence, including Dr. McKenna's testimony and Dr. Hawkins' examination report indicated that Plaintiff did not

have any physical restrictions that prevented him from working full-time. (R. 39, 128, 435-42); *see e.g. Schreiber v. Colvin*, 519 F. App'x 951, 960–61 (7th Cir. 2013). Therefore, after an examination of the entire record, it is clear that the ALJ's deemphasizing of Plaintiff's side effects was supported by substantial evidence, and was therefore proper.

## C.     Dr. Heinemann's Opinion

Finally, Plaintiff argues that the ALJ erred in rejecting the medical opinion of the ME, Dr. Heinemann and finding that he did not have a severe mental impairment. Specifically, Plaintiff argues that the ALJ's reasoning for rejecting Dr. Heinemann's medical opinion was not sound.

The ALJ determined that Dr. Heinemann's opinion – that Plaintiff has moderate limitations in activities of daily living and maintaining concentration, persistence, or pace – "ignores the claimant's failure to comply with recommended treatment, his limited treatment, his diagnoses of depression in the context of/in conjunction with past substance use now in reported remission, and his unremarkable mental status examination findings." (R. 45.) According to Plaintiff, Dr. Heinemann's medical opinion should have been given weight, as Dr. Heinemann recommended limitations that are consistent with patients suffering from severe depression. While Plaintiff does not provide an argument as to why, it appears he believes that Dr. Heinemann's testimony regarding moderate limitations in activities of daily living and maintaining concentration, persistence, and pace would contradict the ALJ's finding that he could perform light work.

Again the court disagrees with Plaintiff. While it is true that the regulations require an ALJ to consider opinions offered by an ME, an ALJ is not bound by those opinions and must evaluate them in the context of the expert's medical specialty and expertise, supporting evidence in the record, and other explanations regarding the opinion. *See* 20 C.F.R. §§ 404.1527(f)(2); 416.927(f)(2); *Haynes v. Barnhart*, 416 F.3d 621, 630 (7th Cir. 2005). Likewise, the relevant policy statement reinforces the requirement that the ALJ consider the supportability of the opinion, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the state agency medical or psychological consultant or other program physician or psychologist. *See* SSR 96–6p, 1996 WL 374180, at *2.

In this case, the ALJ concluded that there was no medical evidence in the record to support Dr. Heinemann's opinion that Plaintiff would be moderately limited in the previously listed areas of social functioning. Moreover, the ALJ noted Plaintiff's generally normal mental status examinations and his improvement while complaint with his medication. For example, during a follow-up appointment at the CORE Center on January 29, 2010, it was noted that while Plaintiff had depression, he was not yet considered a candidate for anti-depressant medication. (R. 415.) Moreover, during another follow-up visit to the CORE Center on May 31, 2011, it was noted that Plaintiff reported being non-compliant with his medication for two weeks but felt "better" when he is on his medication. (R. 514.) As the ALJ found, this fact was inconsistent with the notion that Plaintiff may have continued to

suffer from serious mental health problems. Furthermore, the ALJ acknowledged that Dr. Heinemann did not have access to medical records later submitted from Madden Hospital demonstrating that Plaintiff had a GAF score of 70 at discharge. (R. 43, 572-74); *see also Farrell v. Astrue*, 692 F.3d 767, 769 (7th Cir. 2012) *citing* Am. Psychiatric Ass'n, Diagnosis and Statistical Manual of Mental Disorders 32–34 (4th ed. 2000) *(*A GAF score of 41–50 indicates serious symptoms; a score of 51–60 indicates moderate symptoms; and a score in the range of 61–70 indicates mild symptoms.)

In contrast, ample medical evidence in the record supports the ALJ's conclusion that Plaintiff's depression does not warrant a finding that it is a severe impairment. During a comprehensive psychiatric evaluation performed on March 26, 2011, it was noted that Plaintiff completes his activities of daily living independently or with minimal assistance. (R. 584.) Dr. Heinemann himself recognized at the hearing that although Plaintiff alleged a two-year history of depression, his treatment only shows actual mental health treatment at the CORE Center for only several months. (R. 43, 149.) Dr. Heinemann also testified that he did not believe Plaintiff's depression meets or medical equals any of the listed mental health impairments, and he found Plaintiff capable of sustaining unskilled work. (R. 152-53.) Furthermore, Dr. Heinemann acknowledged that while Plaintiff was referred for a mental health consultation, there is no evidence or documentation in the medical record that he saw a doctor concerning his mental health. (R. 149.) Because the Plaintiff failed to provide evidence to show that his

depression would constitute a severe impairment causing further limitations, and because the Court finds ample evidence supports the ALJ's conclusions, the court upholds the ALJ's disability determination.

Plaintiff also argues that the ALJ should have given more weight to Dr. Heinemann's medical opinion because it was consistent with the medical opinion of Dr. John Raba of the CORE Center. However, this argument also lacks merit. As the Commissioner correctly argues, the ALJ properly and reasonably reviewed Dr. Raba's medical opinion and accorded the opinions no weight. (Def. Mot. at 5-6.) The ALJ gave several reasons for so finding, most notably that Dr. Raba's own treatment notes were inconsistent and did not support Dr. Raba's findings that Plaintiff has moderate restrictions in activities of daily living, social functioning with the general public, accepting criticisms from supervisors, and getting along with coworkers. (R. 46.) In fact, according to the ALJ, they were inconsistent with his treatment notes from both the CORE Center and the Madden Mental Health Center. And while Dr. Raba may be considered a treating physician under Social Security regulations, "when the opinion of a treating physician is not supported by medical evidence and is inconsistent with the substantial evidence in the claimant's record, the ALJ will not give the opinion controlling weight." *Smith v. Apfel*, 231 F.3d 433, 440 (7th Cir. 2000). After a review of the record, it was reasonable for the ALJ to have attributed no weight to Dr. Raba's medical opinion and little weight to Dr. Heinemann's medical opinions. Consequently, the ALJ supported her decision

with substantial evidence. In sum, the Court finds the ALJ did not err in finding

Plaintiff not disabled and therefore capable of performing light work.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No.

12] is denied and the Commissioner's motion [Doc. No. 20] is granted.

**SO ORDERED.**                              **ENTERED:**


**DATE:    February 28, 2017**

**United States Magistrate Judge**